sides, I guess. To what extent can these two sort of be argued together to the possible benefit of the court as we're trying to put all this together? From from the plaintiff's standpoint, Your Honor, again, I'm Mike Grabhorn. I represent the plaintiff appellant, Mr. Roger Smith. We have different claims against different defendants. I think where we can probably expedite some of the process is how much you really want me to go into the facts when we argue Smith v. Agon versus the case currently right now, which is Smith v. Commonwealth General Insurance Company. I think it might be useful to kind of give us a global picture on the facts at least. Yeah, that was my intent on the first one and then on the second. But the same counsel represents each side, right? Yes, Your Honor. Now with respect to the second case that we presented, the Department of Labor will be speaking. I may proceed. May it please the court, again, my name is Michael Grabhorn. I represent the plaintiff appellant, Roger Smith, in this action. Before the court at this time, I would like to reserve, with the permission of the court, three minutes for my rebuttal time. The two issues that are presented on this appeal involving Mr. Smith and Commonwealth General Insurance Company are twofold. One is whether or not the court had subject matter jurisdiction in which to entertain the case that was removed from state court under a federal question. And then secondly, assuming that the court did have jurisdiction, and the argument is that ERISA preempted the state law claims, what should have happened at that point? Whether or not Mr. Smith properly named a defendant, then ultimately the relief there that even if he did not, that he should have been permitted to amend his complaint. Was it requested that he amend the complaint? Yes, it was in the briefing, yes, your honor. Okay, before it was dismissed? Yes, your honor. Okay, again, we're up here today not on a merit so much, we're up here on a procedural 12b6 motion to dismiss, as well as the denial of the motion to remand. The relief we seek with respect to subject matter jurisdiction, I think, is a threshold issue which speaks for itself, which is that the court reversed the district court, find that the, essentially, the excess benefits here, the non-qualified plan, the severance plan, was not subject to ERISA and should have been remanded to state court. To the extent that the court affirms that decision, obviously, we're still in federal court on a federal question, that the proper relief would be to allow the case to go back for Mr. Smith to proceed against Commonwealth General as a proper party, and or as well to his amended complaint, to recast his claims, state law claims, under ERISA as case law dictates. With respect to the facts, I think that's kind of how we started this discussion here today. What's going on here and why are we before the court? Mr. Smith was a longtime employee of Commonwealth General Insurance Company, worked in Louisville, Kentucky, resided in Louisville, Kentucky. Commonwealth General Insurance Company is registered as a corporation, residing in Kentucky with the Secretary of State, has been a longtime company in Kentucky and still is. Long about, I don't remember the exact date, but in the late 90s, I want to say around 1997 or so, there was a consolidation of insurance companies across the country with Agon being one of the leading companies buying other smaller companies, so to speak, and there was a buyout between Agon and Commonwealth General. As part of that buyout, as typically happens, they wanted to maintain some integrity and continuity, I believe, in the transfer and the changeover of control and that sort of thing. And so they offered select employees several packages in exchange for continuing employment. If you don't leave us today, if you will agree to stay through this transition to a date certain, we're going to pay you enhanced benefits. We refer to it in the briefing as the VERP, V-E-R-P. That is the severance agreement that was part and parcel. In Mr. Smith's context, what the VERP agreement was going to do was to provide two payments. One was a lump sum additional payment over and above all other benefits he was already entitled to or invested in. And then secondly, the one that is really driving both of these cases is a non-qualified excess benefit, monthly benefit, that was going to be payable for the remainder of his life. It had two dates. It had a fixed amount. I don't remember the exact amounts in the briefing, but it reduced it at, I want to say, age 65 to a little bit lower amount, but the amounts were fixed. Based on the offer that was made to him by Commonwealth General, Mr. Smith agreed to stay on until February of 2000. He signed what was the Voluntary Retention and Retirement Program Waiver and Release, which is found at page ID 322 and I believe 323, docket number 15-1 in the lower court. He remained, let me put it this way, he fulfilled his obligations. He stayed through February of 2000, left the and sought to collect the severance benefits. He received those benefits. They started in roughly March of 2000. They continued up through 2011, roughly approximately 11 years. At that point in time, Mr. Smith gets a letter from the Aegon Pension Plan telling him that his benefits had been overpaid for the last 11 years, demanding that he remit to them roughly $150,000 in alleged overpayment of benefits and cut his monthly benefit in half, essentially took away what was the excess benefit. They dropped him down to just what his already accrued pension benefits were at the time he signed the agreement. The alternative they gave him was, if you don't repay the $150,000 immediately, we're going to take that out of your monthly benefits until such time as they're no longer payable or we recover it or if you die, we're going to take it out of your survivor's benefits. Notably, they didn't seek any declaratory relief from the courts. There's nothing in the plan language that permitted them to do these things. They just did it on their own. Now, the point that I want to make here clear is this. The contract was between, the severance agreement was between Mr. Smith and Commonwealth General, the defendant Apelli here. They chose, I have no idea and it's not in the record. Again, this is a motion to dismiss. They did file, I don't believe an answer was even filed in this one. No, it wasn't. An answer was not even filed. We're on a motion to dismiss here, so we didn't even really get into the discovery of things, why they did what they did. Let me ask you this. Yes, sir. The contract was between Mr. Smith and the employer. Was the VRT plan or the ERISA plan a signatory to the paperwork in the year 2000 in connection with this issue? Did the pension plan sign the severance agreement? Yeah, exactly. To my knowledge, no. And turning back to the issue, what it appears happened is Commonwealth General chose to fund the non-qualified benefit, this excess amount that they've now said he was overpaid. They chose to fund it through the pension plan. And so by their analogy, because they chose to use a different funding mechanism, two things occurred. One, it transposed this non-qualified excess benefit plan into a qualified ERISA plan. And secondly, altered who was liable to him under the terms of the severance agreement. In respect, we disagree. In the Sixth Circuit, an individual does not have to pursue every claim against every defendant. They can have claims against different defendants, which is what's going on here. It is our contention that he had a valid claim against the employer to enforce the terms of the severance agreement. Marks supports that. Judge Coffman and retired, I should say Honorable Judge Coffman and MLS versus Templin, excuse me, Hall versus MLS, made the same observation that there can be numerous claims in a lawsuit or numerous claims before a lawsuit that an individual may have. They don't have to bring them against all parties. They don't have to name all parties or make all claims necessarily. Could have. But we could have. Okay, fair enough. Was this Commonwealth General still in existence at the time the lawsuit was found? Yes, sir. They were an active corporation on the Kentucky Secretary of State website. I did verify that. Was it, well, what was their relationship to AGON or however you pronounce it? As I understand it, as I understand it now, and you're asking me, I'm giving you off the cuff because we didn't get into any discovery, obviously, with the motion dismissed. As my understanding, they are a wholly owned subsidiary. I believe they're a wholly owned subsidiary now. They're a subsidiary of? Of AGON, not the pension plan. Oh, Commonwealth General is a wholly owned subsidiary. Yes, AGON is the boss. That's the parent corporation. I believe so. You've said several times now that we didn't get into any discovery. We're only here on a motion to dismiss. But it seems to me like that's not quite exactly an accurate statement. There was a motion to dismiss, of course, but you also tried to get this sent back to, after it was removed, to get it sent back to the state court on the grounds of lack of subject matter jurisdiction on which the defendant, of course, would bear the burden. And so those facts which are necessary to demonstrate that there isn't subject matter jurisdiction would have had to come before the court, would they not have? Because the claim, of course, is that there is subject matter jurisdiction because this is complete preemption under ERISA, and that can't be shown without some facts. In response, Your Honor, I believe what we have is, and I don't know that we have anything at the appellate level on this or not, I see a number of the district court cases, and Judge Tepora comes to mind out of the Eastern District of Kentucky, where he has pointed out, sometimes to Aponte, on a removal of a case that, as you noted, the defendant bears the burden, the removing party bears the burden of demonstrating subject matter jurisdiction is appropriate. And Dictor, to some extent, has commented on how, what if the defendant says, I need discovery? And the comment has been, well, then you need to go back to the state court, and when the time is ripe, when you have the discovery, you come forth and present it to us because you made a good faith basis that jurisdiction is appropriate. From my standpoint, from a practical standpoint, what we looked at was that they bear the burden of demonstrating that ERISA applies to the seventh agreement, that these non-qualified, these excess benefits are, in fact, in ERISA plan. They made no effort to do so on that. Instead, what they wanted to do, they wanted to argue about how Commonwealth General funded its obligation. It funded it through the pension plan. That's apparent. But part of what they argued, as I understand the record in this case, is that your client was part and parcel of a specific amendment to the plan which incorporated the VERP. Is that not true? I believe that, yes. I believe that's an accurate statement of what they argued. There is a, and I don't remember which exhibit it is, to the pension plan, where they identified individuals who had participated in the VERP, and one of the benefits of the VERP, where the amendment had to come into play, was it affected either their service, I don't remember if it was exactly their service, or how they could take reduced early retirement benefits under the pension plan. Understand, there's two parts to this. They still get their pension plan, and that was enhanced as far as when they can pull it, and then there was a non-qualified excess benefit which had two components, the lump sum and the monthly amount. The lump sum's not an issue, but the monthly benefit is. And for reasons that we don't know, Commonwealth General selected or chose to not pay this out of their general assets, not pay it out of Agon's general assets for that matter, but to instead pay it out of the pension plan. And one of the tests, just because they chose to fund it over here, it's no different than they went out and bought an annuity, where we saw in numerous cases in the mid and early 90s, where companies were doing... They'd buy the annuities to fund the benefits and then walk away. When there's no longer any administrative scheme, when there's no more discretion on behalf of the plan's sponsor, the ERISA plan no longer exists. ERISA does not attach that far. Just because he makes reference to how they paid him, doesn't convert his claim into an ERISA claim. His agreement was between himself and Commonwealth General. They provided the enhanced pension benefits. We don't have an issue with that. They provided the lump sum. We don't have an issue with that. What we do have an issue with is them trying to claw back what they paid out of the pension plan, but what they should have paid him on that non qualified. And what I think is going on is that originally, and we haven't gotten to this in the case, because of the procedural nature of it is, is to find out why they funded it out of this pension plan versus writing the other severance plan is done, like every excess benefit plan is done. The record contains evidence that the benefits were paid, were to be paid. The excess benefits were to be paid out of the general assets. It reflects that. And under ERISA, ERISA has a specific exclusion for an excess benefit plan funded out of general assets is not an ERISA plan. It's similar to the salary continuation plan short term disability out there, the payroll practices. And Department of Labor has already issued multiple opinions and regulations concerning that those payroll practices do not convert a claim into an ERISA claim. Just because we look at the pension plan for the value of the claim doesn't make it a value. The context is too tenuous and remote. Now, with... I'm sorry. Part of my concern in how this whole thing is shaping up is that your red light is on at this point. Yeah, I just saw it. And you're welcome to utilize your time however you want to. Right now, you're into your reserved three, but your red light is on. Well, Your Honor, I'll respect the court's time. I can address on rebuttal any questions or anything else. I think that's fair. Thank you. Good morning. May it please the court. My name is David Levin and I'm here on behalf of Commonwealth General Corporation. First thing I'd like to do is correct the record. First of all, the argument that you just heard about non qualified excess benefit plan was not made to the district court. These words, excess benefit, do not appear in any of the three briefs that were filed by Mr. Smith in the district court. I'd also... That's just as a notion that you all generally, as I understand it, don't review issues that weren't presented or reviewed by the district court. But separate and apart from that, there is a matter of fact here that is completely inconsistent with what you have just heard. The complaint in this case, which was filed in Kentucky court, says Mr. Smith... Pardon me for reading. I remember cases and regulations, but I don't remember the words of the complaint. The complaint says, at paragraph 13, Mr. Smith relied on the terms of the VRP agreement, including the amount of monthly compensation and accepting CGC's Commonwealth's offer. And the document was signed, that's to say, was accepted in February of 2000. Attached to the... Which you can take notice of... Attached to the complaint in the second case, that's Smith 2, against the pension plan, at paragraph 10, Mr. Smith writes, at the time CGC approached Mr. Smith, he was fully vested in his plan, the terms of the agreement were reflected in the voluntary employee retention and retirement program, which is attached here too. That document, which is dated December of 99, three months before Mr. Smith, who was the head of human resources for Commonwealth General, and who drafted the VRP, a part of the retirement plan, that document states, this is document 1-1 in the second case, the VRP offers special benefits under the company's retirement plan, the medical plan, and the survivor benefit plans. And on the next page it states, the VRP benefits are a payment from the company's tax qualified retirement plan, the VRP payment. There has never been an issue that this benefit, the VRP benefit, was payable from an excess benefit plan or payable from the assets of Commonwealth General, not as a factual matter, not as an argument. In addition, in this case itself, we filed, because Mr. Smith only filed a partial document, we filed what's, it's an ECF document 15-1, which is a whole package of material that was sent, and it states at page, it's 19 of 55, if you elect to participate in the voluntary employee retention and retirement program, you will be entitled to receive additional benefits from the Mr. Smith before, after he'd amend, offered to, drafted the amendment to the retirement plan to pay the VRP benefit, and before he signed his agreement. So as a matter of fact, this issue about non-qualified excess benefit plan, if you will, is not only a red herring, it's not a fact. In addition, although it wasn't argued below, one of the reasons why I think that issues that aren't argued below have no business here, is that a non-qualified excess benefit plan is a statutory term. It's found under, if you, the ERISA section is 3, there are no letters, parenthesis 36, and it is accepted from coverage under ERISA, under ERISA section 4, but a non-qualified excess benefit plan has a very limited purpose. The statute says it can, its sole purpose is to provide benefits in excess of section 415 in the Internal Review Code. It cannot be offered for any other purpose. This issue, as far as I can tell, has never been presented to the Sixth Circuit. All of the other circuits that have looked at this issue have said the language solely means solely. In this case, we know that Mr. Davis's, for this offer, was something in addition to benefits in excess of the 415 limits in the Internal Revenue Code. It was to retain employees. It had more than one purpose. So what I say to you is, this is an issue that wasn't addressed by the court below because it wasn't presented to the court below, and the facts are to the contrary. I'm having a little trouble with your argument here. I thought he was arguing that the, he was induced to enter this agreement based on promises made by the employer, and it turned upon, he provided consideration for the increased enhanced retirement benefit, but the deal turned not on whether it would be paid out of, the additional amount would be paid out of this plan, whether it's an ERISA plan or not, but that he would be paid this additional employment, this additional retirement benefit, and your argument is that the whole thing turns on what corpus the amount would be then the employer could promise that he'd get the benefit, but then not pay it because you permit the ERISA plan not to pay, and so he simply doesn't get paid what he was promised. So I mean, all this stuff about, that you're talking about, what he signed as to what plan, and as to this plan, it just seems like a little bit of a stretching of what it would appear to be the plaintiff's argument. If you will, your honor, that I wasn't clear. In 1998 or 7, Mr. Smith drafted for the review and acceptance by the Board of Directors of Commonwealth General a VERP amendment to the retirement plan. He did it himself, and he gave it to the Board of Directors for the benefit, the VERP benefit to be paid from the retirement plan. That's what he did. That's a matter, if you will... Why does everything turn on that? The deal that he made for the additional retirement benefit was not made, signed until the year 2000, as I understood, and so he was all ready to receive the base amount of whatever retirement amount that he was entitled to prior to that was to come from the general retirement plan. Is that right? Both of them were to come from the general retirement plan. The amendment that he drafted, the VERP amendment, made the VERP payment from the retirement plan. It was an amendment he drafted to the plan. He drafted it and submitted it to the Board of Directors before he accepted the VERP and before he went out on the VERP. The arrangement, there was no arrangement and there's no evidence in the record that there was any arrangement whatsoever to provide Mr. Smith with the benefit other than from the retirement plan. What I'm asking about is the additional retirement benefit was promised to Mr. Smith from the employer, not from the VERP. No, Your Honor. The benefit that was promised by the employer from the benefit plan. It wasn't promised from the employer and it's a very big difference. Are you saying that the employer was acting and speaking on behalf of the VERP in negotiating this deal with Mr. Smith for the additional retirement benefit? It wasn't. Because really the entity that wanted the plaintiff to continue to provide additional services for a period of time was Commonwealth or Agon, was the employer, not the VERP. Is that right or not? I'm not sure that I understand your question. Commonwealth came to Mr. Smith and offered Mr. Smith an arrangement and the arrangement to stay on was you will receive the VERP benefit and the VERP benefit was payable from the retirement plan. To provide services to the employer for that benefit, is that right? That's what people do for retirement benefits, Your Honor. People agree to work for retirement benefits, they agree to work for medical benefits. In other words, this was a deal he made with the employer. To provide benefits to him from the pension plan. Can we look at this from a somewhat different perspective? Certainly. Would the whatever that deal was, is it related to an ERISA plan? Absolutely, Your Honor. In fact, if the pension plan had continued to pay him benefits, we wouldn't be here today. What Mr. Smith presented to the District Court was, well, this was a severance benefit plan. So the District Court analyzed it in terms of whether or not it satisfied the requirements for a severance plan that's the District Court found that it satisfied all of those requirements. And then the court said, it says it on its first page in a footnote, and then it says, as a matter of fact, the benefits that are at issue here are benefits from the retirement plan. And that's what the District Court found as a matter of fact, because the existence of an ERISA plan is a matter of fact. Judge Clay's concern is there was a deal between Mr. Smith and the employer. And Mr. Smith says, I didn't care where the money came from, I have a contract. And the contract says I'm going to get paid a lump sum plus monthly money. And I ought to be able to sue you for breach of that contract. So my, and I can certainly understand why Mr. Smith would feel that way. But my concern is, what do we have to look at to make the jurisdictional determination of whether, even though there might have been a breach of that contract, it relates to an ERISA plan for purposes of complete preemption? In order to respond to your Honor's question, in order to answer the question of what Mr. Smith is or is not entitled to, you have to look at the VERP. And the VERP is a provision in the retirement plan. There's no way to resolve this case without looking at the retirement plan, which has the VERP provision in it. And why can it not be resolved by looking at the contract between Mr. Smith and Commonwealth? Because the contract that he's talking about is a part of the pension plan. The language that he's looking at says that it's right in the, this contract, this severance agreement, says you are going to be paid your benefit from the retirement plan. And the benefit that's at issue is that benefit from the retirement plan. There's no way to get around it. Counsel, let me ask you this. Mr. Smith was paid $2,189 of their balance for 11 years as his pension payment. Then after 11 years, all of a sudden, he's, and he thinks that's what he agreed that he would get. All of a sudden, he gets a notice saying, well, look, we're overpaying you. You should only have gotten about half that amount. We together so far? Say again? Do you agree that's what happened? That's what happened. Okay. There's one fact left out. Okay. Mr. Smith received a lump sum payment from the $193,000. That's not at issue. Actually, it, since, but you're mentioning the facts, if you will, Your Honor. Well, there are lots of other facts in addition to that if we want to be here all day, but that lump sum, nobody's disputing that. That's not at issue. Well, if we were on the facts, Your Honor, it would be because of the payment that he got over the 11 years was the annuitized form of the $193,000. He was getting paid twice. Somebody made a mistake. Wait a minute now. He was told, he was told, it wasn't his mistake if it was a mistake, he was told he would get the lump sum plus the $2,189 per month, and he got that for 11 years. No, Your Honor. In fact, he didn't get it for 11 years. But if you look in the facts, you'll see, and it's in the material that's actually presented to, was in the document, pardon me, in document 15-1 and in document 22-1. In fact, Mr. Smith had the opportunity to elect the format for receiving his FERP, and he elected lump sum, and the letter back says, you guys elected your lump sum. He didn't elect the annuity. They paid him by mistake the annuity in addition to the lump sum. That's really why we're here. But, but those are facts that some court somewhere will hopefully hear. But, but just so you'll know, this isn't just 11 years of extra money. And, but these are the facts. But what you have here is... Wait a minute now. He contends that he was entitled to the lump sum plus the monthly amount. You, you're saying now he wasn't entitled to the lump sum. No, what I'm saying is he was entitled to the lump sum because he asked for it. It was the annuity that he wasn't entitled to, the extra money that he got. But those are, and I've used up my time, but if you will, Your Honor, those are the underlying facts in the case. But at the end of the day, there is absolutely no way to decide this issue without considering the, the retirement plan, the FERP amendment to the retirement plan, the payments that he was receiving under the retirement plan, because the offer that he accepted, which is attached to the second complaint that will actually says, the offer to him is you get your benefit from the retirement plan. That's the offer that he accepted, none other. And, and if you will, the, I know I've used up my time, but if I may, an employer who is not the plan administrator, and the employer is not the plan administrator here, and who has no control over the provision of benefits is not the proper defendant. You, Judge Seiler, you asked a question about whether or not he moved to amend. He, there was no motion to amend made or request to amend made in the opposition to the motion to dismiss. There was no Rule 60B, even after the court entered, there was no Rule 60B motion filed to reopen in order to allow him to amend. And there are no facts alleged in the next case that you're going to hear that Commonwealth General had any role whatsoever in this matter. And the court said in the first case that in neither in the complaint, nor in any of the briefs that Mr. Smith filed in Smith 1 against Commonwealth General, did he allege a single fact that provided a basis for bringing an action against Commonwealth General under arrest. And I thank you for your time. Thank you for giving me three minutes, Your Honor. I know I went over last time. Real quick, I want to address the last statement that was made, and it's actually part of the agreement, or the discussion that we really didn't get to on the second issue, which is proper defendant and what the relief should have been. Again, we're here on a motion to dismiss. We're not here in that the complaint has to be taken as written, the facts, they didn't even contest the facts in our appellate brief. They have to be accepted as true for the purposes of everything we do here today. A lot of the facts I heard coming up there aren't in the record. It's their version of the record. It sounds like a summary judgment argument, not a motion to dismiss. Well, the motion to amend would certainly be in the record someplace. It is, Your Honor. You say it's there, and he says it's not. It's on page ID 360. It says the proper remedy is for Mr. Smith to file an admitted complaint in court. It's on page 7, document 21. That was our response to the motion to dismiss before Judge McKinnon. You didn't have a separate motion to amend? No, no, because the case law... Here's what happens there. A defendant removes a claim asserting ERISA preempts. Well, ERISA doesn't nullify. ERISA is an enforcement mechanism, and so typically, because we're dealing with contract, a breach of state law contract becomes an A1B claim for benefits. We just recharacterize. Arguably, this case law says we don't have to redo it, but to clean the record, more often than not, most of the judges, the district judges, want to clean a record and say, look, we're not going to go through the recasting. I'm going to say that ERISA preempts all your state law claims. You have 21 days, or however long they do it, to file an amended complaint. We reminded Judge McKinley of that, that to the extent that he found that we hadn't named the proper defendant, that we needed to recast these and we reserved that right before the court, contrary to what Defendant Apelli has said. Now, with respect to the non-qualified versus excess benefit, we're getting into semantics here. All of the documentation before the court talked about non-qualified. Mr. Smith entered into an agreement to continue his employment, to receive his pension benefits, which he was already going to get, those would enhance and pay by a gun pension, and also to get a non-qualified additional monthly benefit, as Judge Clay, you were alluding to. There is no dispute on that lump sum, which is another component of it. And interestingly, Mr. Smith, for 11 years, received two checks. Now, what was odd, when we look at the checks is, when you add them together, they total up to the total amount that's at issue here on these monthly benefits. It's pension plus it's non-qualified. Were they broken out exactly as that? No, we don't know why. But there were two checks there. One from the non-qualified plan, and then the balance from the pension plan. Why they chose to do that, we don't know. Your Honor, if I may, I'm about 10 seconds. May I complete this last thought before I start into it? To answer your question, you say one from the non-qualified plan, one from the benefits plan. From... Yeah. Checks, you mean, Your Honor? Yeah. Yes, he received two... Well, I believe they may have been electronic deposit, but the equivalent of two checks monthly. One from a non-qualified, and then the other from the pension plan. Did I answer... That's in the record? Huh? That's in the record? I can't say for certain if it is or not, but most of the facts that were alluded to by counsel here as well were not... What you mean is one was from his general retirement, that he would have gotten before he entered into the agreement, and then there was the additional retirement that he had negotiated to receive thereafter. Was that your understanding of why the two checks? Yeah. Typically, my experience as you're litigating pensions and dealing with pensions is when you have an excess benefit plan or a non-qualified plan, for that excess amount that the IRS won't let you pay through the pension, you get one check from the pension, and you get another check that's a general assets. And under the idea of severance, in order for a severance plan to be subject to ERISA, there has to be two things. They have to exercise some additional discretion after the agreement. They didn't. It was laid out. It was calculated. It was already done. So then the second element that they have to meet in order to have this severance plan, this component be subject to ERISA is some sort of ongoing administrative scheme. What is the basis for your saying that with regard to what is a severance plan, they have to demonstrate some agreement? Right. The test. There's a two-part test with respect to whether or not a severance plan is subject to ERISA. I want to say Marks. Don't hold me to the exact case name. I know it's in the briefing. But there's a two-part test. And the two-part test says, one, is there something that has to be done to really look at, if we were doing this for justice, just a slight, we have to look at you specifically and do some sort of analysis? No. All he had to do was stay through the end of his employment, as agreed, and he would receive those monthly benefits and some benefit that was alluded to. There was nothing else to be done there, no discretion to be done. It was out. The second element that they have to demonstrate is that once that's done, is there any sort of ongoing mechanism providing health insurance and processing claims, anything like that? No. Other than writing a check every month. That's a settler function. That's not ERISA. That doesn't entertain any fiduciary discretion. Hopefully that answers your way beyond my time. I thank you for your indulgence. Well, this part will be submitted, and I guess we can formally call the next case.